IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:05-CR-00216-FL-1
5:13-CV-00771

**Michael Thomas McMillion**

                Petitioner,

v.

**United States of America**,

                Respondent.

**Memorandum & Recommendation**

      Petitioner Michael Thomas McMillion, proceeding under 28 U.S.C. § 2255, seeks to vacate, set aside, or correct the 213 month sentence of imprisonment imposed in connection with his guilty plea to one count of knowing possession of a firearm by a convicted felon. ("Motion to Vacate.") McMillion argues that he is entitled to relief because his appointed counsel's performance at his sentencing hearing was so deficient that it violated his right to counsel under the Sixth Amendment to the Constitution. The Government argues that McMillion's claim is barred by the statute of limitations.

      After reviewing the docket and the arguments of the parties, it appears that McMillion is not entitled to the relief he seeks because (1) he failed to file his Motion within the one year limitations period for § 2255 claims and he is not entitled to equitable tolling of the limitations period; and (2) he failed to establish that his counsel's performance at sentencing was inadequate. Therefore, the undersigned recommends[1] that that the court deny McMillion's Motion to Vacate (D.E. 34, 38) and grant the Government's Motion to Dismiss (D.E. 40).

---

[1] The district court referred this matter to the undersigned United States Magistrate Judge for the entry of a memorandum and recommendation pursuant to 28 U.S.C. § 636(b)(1).

**I.     Background**

In early 2006, McMillion entered a guilty plea to one count of knowing possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g).  As a result of his guilty plea, the court entered a judgment on July 19, 2006, requiring him to serve a 213 month prison sentence. (D.E. 31.)  McMillion did not appeal either his conviction or his sentence.  On November 4, 2013, he filed his Motion to Vacate and the Government responded by filing a Motion to Dismiss.

**II.    Discussion & Analysis**

In order to prevail on his Motion to Vacate, McMillion must show that (1) his sentence was imposed in violation of the Constitution or laws of the United States; (2) the Court was without jurisdiction to impose such sentence; or (3) that his sentence exceeded the maximum authorized by law.  28 U.S.C. § 2255(a).  He must establish that he is entitled to relief by a preponderance of the evidence.  *See, e.g.*, *Miller v. United States*, 261 F.2d 546, 547 (4th Cir. 1958) (*per curiam*) ("Because the proceeding under 28 U.S.C. § 2255 is a civil collateral attack upon the judgment of conviction, the burden of proof is upon petitioner to establish [his claim] by a preponderance of evidence . . . .").

McMillion claims that his sentence was imposed in violation of the Constitution because his appointed counsel's performance was so inadequate that it violated his right to counsel under the Sixth Amendment to the Constitution.  The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right … to have the assistance of counsel for his defence."  U.S. Const. amend VI.  A defendant's right to assistance of counsel may be violated if his attorney fails to provide adequate legal assistance.  *Strickland v. Washington*, 466 U.S. 668, 686 (1984).  This right applies at all stages of a criminal proceeding, including sentencing.

*Mempa v. Rhay*, 389 U.S. 128, 134 (1967); *United States v. Burkley*, 511 F.2d 47, 51 (4th Cir. 1975).

McMillion asserts that his counsel violated his Sixth Amendment rights in two specific ways. First, he claims that his attorney misinformed him that, pursuant to his plea agreement, he had waived any right to directly or collaterally attack his sentence. He contends that, but for this purported error by counsel, he would have filed a timely challenge to his sentence. Second, he claims that his counsel failed to object to the methodology the court used to determine that he qualified as an Armed Career Criminal under the Armed Career Criminal Act, 18 U.S.C. § 924, *et seq*. The Government seeks dismissal of McMillion's Motion as untimely. The court will address each argument below.

### A. Timeliness

Although it does not address the merits of McMillion's Motion to Vacate, the Government argues that the Motion should be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure because he has failed to state a claim upon which relief may be granted. Specifically, the Government contends that McMillion filed his motion outside the one-year statute of limitations governing Section 2255 claims. Ordinarily, a court will not address an affirmative defense such as the statute of limitations when resolving a 12(b)(6) motion. *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007). However, it may do so if all of the facts necessary to rule on the affirmative defense "clearly appear on the face of the complaint." *Id.* In this case, the Motion to Vacate contains sufficient information to establish that McMillion's Motion was not filed in a timely manner.

The Anti-terrorism and Effective Death Penalty Act ("AEDPA") established a one-year limitations period for a motion for collateral relief under Section 2255. Specifically, Section 2255(f) provides:

(f) A 1–year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of—

(1) the date on which the judgment of conviction becomes final;

(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f)(l)-(4).

Because he did not file a direct appeal, McMillion's judgment became final when his time to appeal expired on August 10, 2006. *See* Fed. R. Civ. P. 4(b); *Clay v. United States*, 537 U.S. 522, 524–25 (2003) (holding conviction becomes final after the time period to appeal or seek review has expired*); United States v. Sanders*, 247 F.3d 139, 142 (4th Cir. 2001) (stating that "since [petitioner] did not file a direct appeal, his conviction became final for purposes of § 2255 subsection (1)," on the date "upon which he declined to pursue further direct appellate review"). Accordingly, to be considered timely, McMillion's Motion to Vacate needed to be filed on or before August 10, 2007. However, he did not file his Motion to Vacate until almost six years after this date, which means that the statute of limitations bars his claim for relief.

McMillion attempts to avoid the effects of his untimely filing by relying on the doctrine of equitable tolling. The Supreme Court has held that a petitioner is entitled to equitable tolling

4

of AEDPA's limitations period if: (1) he has been pursuing his rights with "reasonable diligence" and (2) some extraordinary circumstance prevented him from filing his petition in a timely manner. *Holland v. Florida*, 560 U.S. 631, 649 (2010). In order to satisfy the extraordinary circumstances prong, the petitioner must show that he was subject to (1) extraordinary circumstances, (2) beyond his control or external to his own conduct, (3) that prevented him from filing on time." *United States v. Sosa*, 364 F.3d 507, 512 (4th Cir. 2004).

McMillion asserts that he qualifies for equitable tolling of the limitations period under the exceptional circumstances doctrine because his counsel incorrectly advised him that his plea agreement contained a waiver of his right to attack his sentence. However, a review of the terms of the plea agreement and the transcript of McMillion's arraignment and sentencing demonstrate that he knew that his plea agreement contained such a waiver and voluntarily agreed to its terms. Thus, McMillion cannot avoid the statute of limitations on this basis.

A defendant may waive the right to attack his conviction and sentence collaterally, so long as the waiver is knowing and voluntary. *United States v. Lemaster*, 403 F.3d 216, 220 (4th Cir. 2005). The determination of whether a waiver is knowing and voluntary depends "upon the particular facts and circumstances surrounding that case, including the background, experience and conduct of the accused." *United States v. Davis*, 954 F.2d 182, 186 (4th Cir. 1992) (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)).

Courts frequently discuss issues related to the defendant's waiver of his right to challenge his conviction or sentence at the time the defendant enters a guilty plea. Absent a showing of exceptional circumstances, a defendant's statements during a Rule 11 colloquy are conclusively established as true. *Lemaster*, 403 F.3d at 221–22.

5

The plea agreement, which McMillion signed, contained a provision regarding waiver of his appellate rights. (D.E. 19.) Specifically, McMillion agreed "[t]o waive knowingly and expressly all rights … to appeal whatever sentence is imposed, including any issues that relate to the establishment of the advisory Guideline range…." (D.E. 19, ¶ 2(c).) The plea agreement only preserved his "right to appeal from a sentence in excess of the applicable advisory Guideline range that is established at sentencing…." (*Id.*)

Similarly, McMillion agreed to give up "all rights to contest the conviction or sentence in any post-conviction proceeding, including one pursuant to 28 U.S.C. § 2255…." *Id.* Only claims of "ineffective assistance of counsel or prosecutorial misconduct not known to" McMillion at the time of his plea were spared from this blanket waiver. *Id.*

Moreover, the court thoroughly questioned McMillion at his arraignment about his decision to waive almost all of his appellate rights. After being placed under oath, McMillion acknowledged that he (1) read the plea agreement (D.E. 46 at 17:16-18:5); (2) understood all the words and phrases contained in it (*id.* at 18:6-9); (3) discussed it with his attorney prior to signing (*id.* at 17:16-18:5); (4) understood it contained a waiver of his appellate rights (*id.* at 18:18-23); and (5) he understood that similar waivers have generally been found to be valid, enforceable, and binding (*id.* at 18:18-24).

Several months later, at his sentencing, the court again advised McMillion that he had agreed to specific limitations on his appellate rights. Specifically, the court said, "You entered into an agreement that does waive some or all of your rights to appeal the sentence. And these waivers, as you were told, generally are enforceable." (D.E. 47 at 22:3-17.) When the district court asked McMillion if he had any questions about his appellate rights, he responded, "No." (*Id.* at p. 22:22–24.)

6

McMillion's sworn testimony at his arraignment and sentencing demonstrate that he was fully aware that he had waived his rights to appeal or collaterally challenge his conviction and sentence. His allegations that his attorney improperly advised him regarding his ability to challenge his sentence are without merit. Because McMillion has failed to identify any misinformation relayed by his attorney he cannot establish that he is entitled to equitable tolling of the limitations period.

Even if McMillion had received incorrect advice from his attorney on this issue, he would still not be entitled to toll the statute of limitations. Courts have been reluctant to find that mistakes of counsel or a defendant's ignorance of the law qualify as exceptional circumstances. *See United States v. Oriakhi*, 394 F. App'x 976, 977 (4th Cir. 2010) (holding that the petitioner's "unfamiliarity with the legal process or ignorance of the law [could not] support equitable tolling"); *see also Harris v. Hutchinson*, 209 F.3d 325, 330–31 (4th Cir. 2000) (holding that a "lawyer's mistake in interpreting a statutory provision" did not qualify as an extraordinary circumstance sufficient to "justify equitable tolling"). Therefore, McMillion has failed to show that he is entitled to equitable tolling of the limitations period and his Motion to Vacate should be dismissed.

### B. Ineffective Assistance of Counsel

In *Strickland v. Washington*, the Supreme Court held that a petitioner must satisfy a two-pronged test to establish a claim of ineffective assistance of counsel. 466 U.S. 668, 686–87 (1984). First, the petitioner must show that his attorney's performance fell below an objective standard of reasonableness. *Id.* at 688. Courts must be "highly deferential" of counsel's performance and must make every effort to "eliminate the distorting effects of hindsight." *Id.* at 689. Therefore, the court must "indulge a strong presumption that counsel's conduct falls within

7

the wide range of reasonable professional assistance." *Id.* Second, there must be "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

McMillion argues that his attorney failed to challenge the methodology used by the court to determine that he was a career offender for the purposes of the Armed Career Criminal Act ("ACCA"). Specifically, he contends that his counsel should have argued that his 1997 kidnapping and robbery spree constituted one continuous criminal episode and not three separate offenses for ACCA purposes. This distinction is relevant because under the ACCA, a defendant who is convicted of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g) and has three or more prior convictions for "a violent felony or a serious drug offense, or both, committed on occasions different from one another[]" is subject to a 15-year mandatory minimum sentence. 18 U.S.C. § 924(e). McMillion believes that he would have received a shorter sentence had his attorney made this argument.

Unfortunately for McMillion, neither the facts nor the law support his claim for relief. Contrary to his assertions, his counsel did object to the court considering the December 30, 1997 as three separate offenses. The court reviewed his counsel's objection and correctly determined that McMillion's prior criminal history qualified him as an Armed Career Criminal. In light of the record before the court, McMillion cannot establish that his counsel's performance was constitutionally inadequate or that the court should have reached a different conclusion regarding his ACCA classification. Therefore, his Motion to Vacate should be denied.

McMillion's Presentence Investigation Report ("PSR") indicated that he should be classified an Armed Career Criminal because he had been convicted of three separate offenses of Robbery with a Dangerous Weapon, all occurring on December 30, 2007, and a conviction for

felony Breaking and Entering. (PSR at 12.) Although the December 30, 2007 convictions were consolidated for sentencing purposes by the State of North Carolina, the PSR considered these convictions to be separate violent offenses for ACCA purposes. *Id.*

McMillion's counsel objected to his classification as an Armed Career Criminal. *Id.* The objection raised the same argument McMillion presents here: the December 30, 2007 convictions should have been considered as a single violent offense for ACCA purposes because they were consolidated by the state court. *Id.* At the sentencing hearing, McMillion's counsel pointed the court to the portion of his PSR which contained his objection and argument. (D.E. 47 at 6:7-15.) After hearing from the Government, the court overruled the objection to McMillion's classification as an Armed Career Criminal. (*Id.* at 6:23-7:1.) The PSR and sentencing hearing transcript refute McMillion's assertion that his counsel failed to object to his classification as an Armed Career Criminal. Absent a showing that his attorney failed to raise this argument and that the failure resulted in his attorney's performance falling below an objective standard of reasonableness, he cannot prevail on his ineffective assistance claim.

However, even if his counsel had not raised this argument, McMillion would not be able to establish that he was prejudiced by this omission. Section 924(e) focuses on whether the defendant was convicted of three violent felonies that were committed on different occasions; "whether they are considered 'related cases' … is irrelevant." *United States v. Medina–Gutierrez*, 980 F.2d 980, 983 (5th Cir. 1992) (internal brackets omitted), *cited with approval, United States v. Hobbs*, 136 F.3d 384, 388 (4th Cir. 1998); *see also United States v. Norton*, 584 F. App'x 158, 159 (4th Cir. 2014) ("'[N]othing in § 924(e) or the Guidelines suggests that offenses must be tried or sentenced separately in order to be counted as separate predicate

9

offenses,' … 'the only requirement for applying the [ACCA] enhancement is that the predicate offenses be committed on occasions different from one another.'").

Convictions are considered to have occurred on different occasions under the ACCA if each offense "arose out of a separate and distinct criminal episode." *United States v. Letterlough*, 63 F.3d 332, 335 (4th Cir. 1995) (emphasis and internal quotation marks omitted). In other words, the predicate ACCA offenses must be those "that can be isolated with a beginning and an end." *Id.* Factors used in determining whether convictions are separate and distinct include (i) whether the offenses occurred in different geographic locations; (ii) whether the offenses were substantively different; and (iii) "whether the offenses involved multiple victims or multiple criminal objectives." *See id.* at 335–36 (footnotes omitted). It does not matter for sentencing purposes if the several crimes are part of a larger criminal venture, as long as each constitutes, by itself, a "complete and final transaction." *See id.* at 337; *U.S. v. Hobbs*, 136 F.3d 384, 388 (4th Cir. 1998).

A review of the circumstances surrounding the December 30, 1997 offenses demonstrate that the court appropriately determined that they occurred on three separate occasions, as that term is defined under the ACCA. McMillion and his cohorts began their evening by kidnapping Charles Monroe and robbing him of money and jewelry. (PSR at 5.) After robbing Monroe, they then robbed a store in Fayetteville of $50.00. (*Id.*) Finally, they robbed another Fayetteville convenience store of cigars, cigarettes, and $124.00 in currency. (*Id.*) Although they all occurred on the same date, these criminal offenses all have a distinct beginning and end, involve multiple locations, and involve multiple targets or victims. Accordingly, for purposes of the ACCA, these incidents may properly be considered as three separate violent felonies even though they were consolidated by the State of North Carolina. *See United States v. Huntley*, 327

F. App'x 438, 439 (4th Cir. 2009) (consolidation of offenses does not merge the offenses under the ACCA as "[n]othing in § 924(e) or the Guidelines suggests that offenses must be tried or sentenced separately in order to be counted as separate predicate offenses") (citation omitted); *United States v. Pate*, 347 F. App'x 931, 932–33 (4th Cir. 2009) (concluding that prior state convictions were properly treated as separate convictions for sentencing under the ACCA even though defendant was arrested for all four offenses on the same day, they were consolidated for judgment, and sentence for the four offenses was imposed on the same day); *see also United States v. Benn*, Nos. 12–4522, 12–4803, 12–4804, 12–4851, 2014 WL 2109806, at *12 (4th Cir. May 21, 2014) (concluding that the Fourth Circuit's holding in *United States v. Davis*, that consolidated sentence under North Carolina law is a single sentence for purposes of the career offender enhancement, does not apply in the ACCA context)).

McMillion cannot establish that his counsel's performance at sentencing violated the Sixth Amendment because his counsel properly objected to his classification as an Armed Career Criminal and the district court's decision to overrule that objection was consistent with established case law. Therefore, McMillion cannot show that his sentence was imposed in violation of the Constitution and his Motion to Vacate should be denied.

## III. Conclusion

For the foregoing reasons, the undersigned recommends that the McMillion's Motion to Vacate [D.E. 34, 38] be denied and that the Government's Motion to Dismiss [D.E. 40] be granted.

Dated: May 13, 2015.

*Robert T. Numbers II* (signature)

ROBERT T. NUMBERS, II
UNITED STATES MAGISTRATE JUDGE